IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| M.N., individually and on behalf of her minor child, A.B., <br><br>  Plaintiffs, <br><br>  vs. <br><br> STATE OF HAWAII, DEPARTMENT OF EDUCATION and KATHRYN MATAYOSHI, in her official capacity as Acting Superintendent of the Hawaii Public Schools, <br><br>  Defendants. | CIVIL NO. 11-00121 SOM/BMK <br><br> ORDER AFFIRMING DECISION OF ADMINISTRATIVE HEARINGS OFFICER AND DENYING REIMBURSEMENT FOR PRIVATE PLACEMENT AND ATTORNEY'S FEES |

ORDER AFFIRMING DECISION OF ADMINISTRATIVE HEARINGS OFFICER AND DENYING REIMBURSEMENT FOR PRIVATE PLACEMENT AND ATTORNEY'S FEES

I.   INTRODUCTION.

Plaintiff M.N., proceeding individually and on behalf of her son, A.B., seeks reversal of the Findings of Fact, Conclusions of Law and Decision issued by the Administrative Hearings Officer ("AHO") regarding whether M.N. is entitled to be reimbursed for A.B.'s tuition at the Pacific Autism Center ("PAC"), a private school. The AHO's decision, issued on January 24, 2011, denied reimbursement, concluding that PAC was not an appropriate placement for A.B.

A.B.'s mother appeals the AHO's ruling, arguing that, as placement at PAC was appropriate, she is entitled to reimbursement from Defendants Department of Education for the State of Hawaii and Superintendent Kathryn Matayoshi

(collectively, the "DOE") for A.B.'s tuition and attorney's fees under the Individuals with Disabilities Education Act (the "IDEA"), 20 U.S.C. § 1400 et seq. This court affirms the AHO's decision to deny M.N.'s request for reimbursement and also denies M.N.'s request for attorney's fees.

II.     STATUTORY FRAMEWORK.

"The IDEA is a comprehensive educational scheme, conferring on disabled students a substantive right to public education." Hoeft v. Tucson Unified Sch. Dist., 967 F.2d 1298, 1300 (9th Cir. 1992) (citing Honig v. Doe, 484 U.S. 305, 310 (1988)). The IDEA ensures that "all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living." 20 U.S.C. § 1400(d)(1)(A).

To provide a free appropriate public education ("FAPE") in compliance with the IDEA, a state educational agency receiving federal funds must evaluate a student, determine whether that student is eligible for special education and services, conduct and implement an IEP, and determine an appropriate educational placement for the student. 20 U.S.C. § 1414.

The student's FAPE must be "tailored to the unique needs of the handicapped child by means of an 'individualized

educational program' (IEP)." <u>Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley</u>, 458 U.S. 176, 181 (1982) ("<u>Rowley</u>") (citing 20 U.S.C. § 1401(18)). The IEP is prepared at a meeting between a qualified representative of the local educational agency, the child's teacher, the child's parents or guardian, and, when appropriate, the child. 34 C.F.R. § 222.50; <u>see also</u> 20 U.S.C. § 1414(d). Local or regional educational agencies must review, and, when appropriate, revise each child's IEP at least annually. 20 U.S.C. § 1414(d)(4).

When a parent disagrees with the contents of an IEP, the parent may challenge that IEP by demanding an administrative due process hearing. <u>See</u> 20 U.S.C. § 1415(b)(6), (f)(1)(A). In addition, a parent may enroll the child in a private program, and, upon establishing that the pubic school failed to provide a FAPE, the parent may seek reimbursement. <u>See</u> 20 U.S.C. § 1412 (a)(10)(C)(ii); <u>Sch. Comm. of Burlington v. Dep't of Educ. of Mass.</u>, 471 U.S. 359, 370 (1985). To be awarded reimbursement, the parent must establish that placement at a private school was appropriate. <u>Id.</u>

III. <u>FACTUAL AND PROCEDURAL BACKGROUND.</u>

A.B. is an 8-year-old autistic boy with severe communication, academic, and behavioral difficulties. <u>See</u> Petitioners' Exs. at 1-9. He was diagnosed with autism in September 2006 and qualifies for special education. <u>Id.</u> at 42;

Administrative Record ("AR") at 14.  From 2007 through the 2008-09 school year, A.B. attended Ewa Beach Elementary, a public school.  Id. at 154.  In June 2009, his mother unilaterally removed him from Ewa Beach Elementary and enrolled him at the Pacific Autism Center.  Administrative Record ("AR") at 154.

PAC applies verbal behavior science and employs a method called Applied Behavioral Analysis ("ABA").  See Transcript of Proceedings ("Transcript") at 38:21 to 39:4, 40:9-15.  The clinical director of PAC, Christi Reed ("Reed"), explained that PAC focuses on the "acquisition of language and how to make that functional."  Id. at 39:9-10.  She described verbal behavior as "breaking down the function of language so that our kids can use it every which way that they will need to help them succeed."  Id. at 42:21-24.  She further explained that, for A.B., "in order to acquire more advanced skills, such as traditionally viewed academic and social skills, [PAC] tr[ies] to decrease problem behavior."  Id. at 72:25 to 73:1-4.  According to Reed, A.B. had behavior problems that arose out of his inability to communicate his wants and needs.  See id. at 70:25 to 71:1-5.

On March 1, 2010, while A.B. was attending PAC, representatives from Ewa Beach Elementary conducted an IEP meeting regarding A.B.  AR at 155.  M.N. attended the meeting,

but a representative from PAC was unavailable.  <u>Id.</u>  PAC provided Ewa Beach Elementary with only limited information about A.B.'s educational performance in the form of a Student Status Report dated December 14, 2009.  Petitioners' Ex. at 1; Respondents' Ex. at 88.

An IEP was prepared in March 2010 that identified a number of goals and objectives for A.B. in various areas, including writing, reading, math, physical education, fine arts, and health.  The IEP provided for occupational therapy, as well as speech and language therapy.  <u>Id.</u> at 10-27.

On May 28, 2010, M.N. told Ewa Beach Elementary Care Coordinator Anne Greseth-Kim ("Greseth-Kim") by telephone that A.B. would be returning to Ewa Beach Elementary the next school year.  Transcript at 111:20 to 112:2.  Greseth-Kim informed M.N. that M.N. had to attend a transition meeting, and that someone would contact her soon to schedule the meeting.  <u>Id.</u> at 114:10-21.  However, M.N. changed her mind and informed Greseth-Kim by letter on June, 28, 2010, that A.B. would be staying at PAC.  <u>See</u> Petitioners' Ex. at 36.  Greseth-Kim continued to try to schedule the transition meeting, but despite numerous attempts, including the sending of a written meeting notice, Greseth-Kim was unable to contact M.N.  <u>See</u> Transcript at 115.

An IEP meeting was held on July 12, 2010. M.N. failed to attend. A new IEP was then drafted. AR at 10.

On August, 6, 2010, Petitioners filed a request for an impartial administrative hearing, claiming that the IEPs of both March 1, and July 12, 2010, were defective and denied A.B. a FAPE. Id. at 6. In addition, Petitioners requested reimbursement for educational expenses incurred from the time of filing (August 6, 2010), as well as attorney's fees. Id.

On January 24, 2011, the AHO concluded that the March and July 2010 IEPs had failed to offer A.B. a FAPE by failing to address his transitional needs. AR at 170. The AHO, however, denied M.N.'s request for reimbursement. Id.

In denying reimbursement, the AHO stated that the "Petitioners . . . failed to prove by a preponderance of the evidence that the unilateral placement of Student at Private School was appropriate." AR at 169. The AHO found that, even after attending PAC for a year and a half, and "[i]n spite of Private School's decision to focus on functional communication," A.B. had so many needs that were "unaddressed" and so many areas in which A.B. had shown no progress that the AHO could not deem PAC to be "an appropriate placement for Student." Id. The AHO also considered PAC's reluctance to allow Ewa Beach Elementary access to PAC's staff, and M.N.'s reluctance to cooperate during the IEP process. Id.

The AHO denied reimbursement under Burlington. See Burlington, 471 U.S. at 370 (addressing the requirement that a court find an IEP inappropriate and a private school placement proper before ordering reimbursement).

IV.     STANDARD OF REVIEW.

Any party aggrieved by a decision of a due process hearings officer under the IDEA may appeal the findings and decision to any state court or to a United States district court. 20 U.S.C. § 1415(i)(2). The party challenging the administrative decision has the burden of proving deficiencies in the administrative decision. Seattle Sch. Dist., No. 1 v. B.S., 82 F.3d 1493, 1498 (9th Cir. 1996).

When evaluating an appeal of an administrative decision, a court "(i) shall receive the records of the administrative proceedings; (ii) shall hear additional evidence at the request of a party; and (iii) basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." 20 U.S.C. § 1415(i)(2)(C). "Equitable considerations are relevant in fashioning relief." Burlington, 471 U.S. at 374.

District courts review the hearings officer's conclusions de novo. Ashland Sch. Dist. v. Parents of Student E.H., 587 F.3d 1175, 1182 (9th Cir. 2009). However, de novo under the IDEA "carries with it the implied requirement that due

weight shall be given to [the administrative] proceedings." Id. (quoting Rowley, 458 U.S. at 206). A district court "must give deference to the state hearing officer's findings, . . . and avoid substituting its own notions of sound educational policy for those of the school authorities which it reviews." Id. (internal quotation marks, modifications, and citations omitted). A court must consider the findings carefully and respond to the hearings officer's resolution of each material issue. Capistrano Unified Sch. Dist. v. Warternberg, 59 F.3d 884, 891 (9th Cir. 1995). The court, however, is free to accept the findings in part or in whole. Id. Greater deference is appropriate when the findings are "thorough and careful." J.G. v. Douglas County Sch. Dist., 552 F.3d 786, 793 (9th Cir. 2008).

V.     ANALYSIS.

This appeal is limited in scope. M.N. challenges only the AHO's conclusion that M.N. was not entitled to reimbursement for A.B.'s tuition at PAC. Under 34 C.F.R. § 300.148(c), reimbursement for a private school placement is sometimes available:

> If the parents of a child with a disability, who previously received special education and related services under the authority of a public agency, enroll the child in a private preschool, elementary school, or secondary school without the consent of or referral by the public agency, a court or a hearing officer may require the agency to reimburse

8

> the parents for the cost of that enrollment
> if the court or hearing officer finds that
> the agency had not made FAPE available to the
> child in a timely manner prior to that
> enrollment and that the private placement is
> appropriate.

However, parents who unilaterally remove a child from a public education to a private school do so "at their own financial risk." Burlington, 471 U.S. at 373-74. The court must conclude that the private school placement was appropriate before ordering reimbursement. Ashland, 587 F.3d at 1183.

### A. PAC Was Not an Appropriate Placement Because PAC Did Not Meet A.B.'s Unique Needs.

Neither party challenges the AHO's conclusion that the IEPs denied A.B. a FAPE.[1] The only issue is therefore whether

---

[1] Because it is not an issue raised on appeal, this court does not address the merits of the AHO's conclusion that the DOE denied A.B. a FAPE by failing to adequately address his transitional needs. As this court ruled in L.I. v. Hawaii, Dep't of Educ., Civ. No. 10-00731 SOM/BMK, which involved a child over the age of sixteen, the requirement in the IDEA that an IEP include transition services does not apply when a child is moving from a private placement to a public school. While A.B. is much younger, the court is unaware of any IDEA provision requiring that his IEP include transition services. Indeed, the AHO stated that he agreed with the DOE "that the IDEA does not mandate inclusion of a transition plan in an IEP." AR at 165. The AHO continued, "However, the IDEA does mandate that Student's needs must be addressed." Id.; see also id. at 167 ("while the Hearings Officer is aware that the IDEA does not mandate that a transition plan needs to be a part of a student's IEP, Student's transitional needs must still be addressed").

The AHO appears to have been saying that, while the IDEA does not require the inclusion of a transition plan in an IEP, the requirement that a student's needs be met includes transitional needs. No citation to any authority is provided by the AHO on this point. The failure of the IEP to address

PAC was an appropriate placement. The Ninth Circuit has recently adopted the Second Circuit's standard for determining whether a private placement is appropriate. In <u>Baquizero v. Garden Grove Unified School District</u>, 635 F.3d 1155 (9th Cir. 2011), the Ninth Circuit held that parents "need only demonstrate that the placement provides educational instruction specially designed to meet the unique needs of a handicapped child, supported by such services as are necessary to permit the child to benefit from instruction." <u>Id.</u> at 1159.

The private placement need not provide an education that meets the IDEA's definition of a FAPE. <u>Florence County Sch. Dist. Four v. Carter</u>, 510 U.S. 7, 13 (1993) (holding that parents were not barred from reimbursement just because the private school in which the student was enrolled did not meet the IDEA's definition of a FAPE). That is, although a school must meet state educational standards to provide a FAPE, reimbursement is not barred by the private school's failure to meet those standards. <u>Id.</u> at 14 (as cited in <u>Baquerizo</u>, 635 F.3d at 1159). Furthermore, "parents need not show that a private placement furnishes every special service necessary to maximize their child's potential." <u>Baquerizo</u>, 635 F.3d.

---

transitional needs was the sole basis for the AHO's conclusion that a FAPE was not offered. <u>Id.</u> at 170. This court questions without deciding whether the AHO could impose a legal requirement (such as the inclusion of a transition plan in an IEP) that the IDEA itself clearly does not require.

10

at 1159. The private school, however, cannot have provided the child with "no educational benefit." See W.G. v. Bd. of Trustees of Target Range Sch. Dist. No. 23, 960 F.2d 1479, 1487 (9th Cir. 1992) ("Target Range"), superceded by statute on other grounds, Individuals with Disability Education Act Amendments of 1997, Pub. L. 105-17, § 614(d)(1)(B), 111 Stat. 37.

In Baquerizo, the Ninth Circuit affirmed a district court's award of reimbursement for an autistic child's placement at a private school because the school met many of the child's educational needs and provided "significant educational benefits." 653 F.3d at 1158-60. The IEP prepared by the school district had identified a number of the child's unique needs. Id. at 1159. The parent did not dispute those needs, but took issue with the services the school district proposed to provide. Id. Notably, while the private school did not meet all of the child's needs, the child showed "'significant growth' in many learning areas and social development." Id. at 1158.

By contrast, A.B. has not shown significant growth, and many of his needs have not been addressed. The AHO found that PAC failed to address "so many" of A.B.'s needs, and that A.B. made "no progress" in "too many" areas. AR at 169. PAC had not met A.B.'s needs in "academics, group instruction, socialization, generalization and occupational therapy," even

11

after A.B. had attended PAC for a year and a half.  Id. at 169-70.

The AHO made "thorough and careful" factual findings, warranting this court's deference.  The AHO consulted the Student Status Report and the Assessment of Basic Language and Learning Skills ("ABLLS") prepared by PAC.  See AR at 161.  The AHO also relied on the testimony of Reed and Greseth-Kim.  Id.  From the ABLLS, the AHO found that A.B. had made "no gains" in syntax and grammar, reading, writing, math, eating, grooming, and gross and fine motor skills.  The ABLLS also indicated to the AHO that A.B. had made "no progress" in social interaction, general responding, and the ability to follow classroom routines.  Id.  Furthermore, based on the ABLLS, the AHO found that PAC had not set any goals for A.B.'s spelling.  Id.

The AHO's decision called attention to Reed's testimony that PAC's focus is "language acquisition."  Id. at 163.  The decision also highlighted Greseth-Kim's testimony expressing surprise and concern that, although A.B.'s IEP identified objectives and needs, the ABLLS indicated that no gains were made in most of those areas, such as socialization and generalization.  Id.

The crux of M.N.'s position is that PAC was indeed addressing A.B.'s educational needs, but doing so using a medical model that, despite using terms different from what

12

academics use, was no less focused or effective than an educational model.  M.N. appears to be arguing that PAC used different words and methods but was addressing what the IEPs would have addressed in terms of academics.  But M.N. does nothing more than assert this, all the while ignoring statements by Reed herself that PAC was not addressing numerous needs or goals set forth in the IEPs.  As noted above, M.N. does not challenge the appropriateness of addressing those needs or meeting those goals.  Yet, as Reed conceded, PAC did not provide, for example, occupational therapy to address gross and fine motor skills.  See Transcript at 77:15-21.  Nor does M.N. address the evidence in the ABLLS that A.B. made no progress in a host of areas, including math and writing.

Reviewing the AHO's findings and the record, this court is unable to find that PAC provided A.B. with instruction designed to meet his unique needs.  Focusing on language acquisition, PAC left many of A.B.'s other needs unaddressed.  The March 2010 IEP identified needs in reading, writing, math, communication, life skills (such as grooming and dressing), and participating in interactive play.  Petitioners' Exs. at 2-8.  The ABLLS, prepared by PAC, indicates that from August 24, 2009 (when PAC took baseline measurements), until September 10, 2010 (the last date of testing), A.B. made no progress at PAC in numerous and wide-ranging areas, including math, reading,

following classroom routines, social interactions, syntax and grammar, writing, spelling, eating, and grooming. Id. at 56-58.

M.N. argues that the ABLLS indicates that A.B. actually did make progress in a number of areas, including cooperation, communication, and motor skills. Pls. Opening Brief at 8. Even if this is true, A.B.'s poor performance in many more areas that the IEP recognized as needs is too stark to ignore. The Autism Program Coordinator at Ewa Beach Elementary, Aileen Kupihea, explaining the deficiencies in A.B.'s education at PAC, noted, for instance, that social interaction "impacts language development, functional language development." Transcript at 165:18-25. She said that, as a "hallmark deficit" of autistic children, social skills should be addressed "in early intervention, . . . and not wait." Id.

M.N. also argues that the technique PAC employs is a "modern perspective on educating children with a severe disability." Pls. Opening Brief at 13. She argues that when A.B.'s progress is evaluated through that lens, rather than the "traditional lens of an educator," PAC is an appropriate placement. Id. The court recognizes that alternative methods of education are often valuable, and that the use of an alternative education system does not bar a court from finding that a private placement was proper. See Target Range, 960 F.2d at 1487 (noting that a private tutor's failure to use the

program determined to be appropriate by the school district was not a bar to reimbursement). However, the issue here is not that PAC is an alternative education system. Rather, the court's concern, as was the AHO's, is that A.B. made no gains in a majority of the areas that his IEP identified as needs.

The court also notes that PAC failed to provide A.B. with exposure to nondisabled children. "Disabled children, to the maximum extent appropriate, should be educated with children who are not disabled, i.e., they should be mainstreamed." <u>Seattle</u>, 82 F.3d at 1500 (citing 20 U.S.C. § 1412(5)(B)). There are no nondisabled children at PAC. Transcript at 46:2. While "mainstreaming" is not always appropriate for a child, <u>Seattle</u>, 82 F.3d at 1500, PAC is incapable of offering it as a possibility.

In short, because PAC did not provide instruction designed to meet most of A.B.'s unique needs, the court agrees with the AHO that PAC was not an appropriate placement for A.B.

> B. PAC's Failure to Provide Information and M.N.'s Unwillingness to Participate in the IEP Weigh Against Awarding Reimbursement.

When determining whether reimbursement is proper, a court "must consider all relevant factors, including the notice provided by the parents and the school district's opportunities for evaluating the child, in determining whether reimbursement for some or all of the cost of the child's private education is

warranted." Forest Grove Sch. Dist. v. T.A., 129 S. Ct. 2484, 2493 (2009). The court is also to consider "[t]he conduct of both parties." Parents of Student W. v. Puyallup Sch. Dist., No. 3, 31 F.3d 1489, 1496 (9th Cir. 1994) (citations omitted). Several factors weigh against reimbursement. First, Ewa Beach Elementary was unable to fully evaluate A.B. at the March 2010 IEP because PAC would not provide Greseth-Kim with A.B.'s records, progress reports, and assessments (with the exception of one Student Status Report). Second, M.N. appears to have evaded the school district when Greseth-Kim tried to organize A.B.'s July 2010 IEP and transition meeting. Transcript at 115:17-21; AR at 169. Greseth-Kim called M.N. and left messages seven times, sent four letters (three of which were returned unopened), and went to her home. Transcript at 115:17-21. M.N. testified that she believed that both parties understood that the meeting was no longer necessary. Transcript at 30:18-25. This, however, does not explain why M.N. failed to respond to any of Greseth-Kim's phone calls and letters. Even assuming placement at PAC had been proper, these factors would weigh in favor of denying reimbursement.

  C. <u>Attorney's Fees are Not Warranted.</u>

  The IDEA authorizes attorney's fees "to a prevailing party who is the parent of a child with a disability."

16

20 U.S.C. § 1415(i)(3)(B)(i)(I).  As M.N. has not prevailed on her appeal, she is not entitled to attorney's fees.

VI.     CONCLUSION.

The Decision of the Hearings Officer is AFFIRMED in its entirety.  M.N.'s request for tuition reimbursement pursuant to 34 C.F.R. § 300.148(c) and for attorney's fees is DENIED.  The Clerk of Court is directed to enter judgment for the DOE and to close this case.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, December 1, 2011.



/s/ Susan Oki Mollway
Susan Oki Mollway
Chief United States District Judge

M.N. v. State of Hawaii, Department of Education; Civil No. 11-00121 SOM/BMK; ORDER AFFIRMING DECISION OF ADMINISTRATIVE HEARINGS OFFICER AND DENYING REIMBURSEMENT FOR PRIVATE PLACEMENT AND ATTORNEY'S FEES